NO. 23-1144

# United States Court of Appeals

*for the*

# Fourth Circuit

———————————————————

ESTATE OF KE ZHENGGUANG,

*Petitioner-Appellee,*

– v. –

YU NAIFEN STEPHANY, a/k/a Stephany Yu, a/k/a Stephany Naifen Yu,
a/k/a Stephany N. Dombrowski,

*Respondent-Appellant.*

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND AT GREENBELT

## BRIEF FOR PETITIONER-APPELLEE

AMIAD M. KUSHNER
JENNIFER BLECHER
XINTONG ZHANG
SEIDEN LAW LLP
322 Eighth Avenue, Suite 1200
New York, New York 10001
(646) 766-1914

*Attorneys for Petitioner-Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>23-1144</u>      Caption: <u>Estate of Ke Zhengguang v. Yu Stephany</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>ESTATE OF KE ZHENGGUANG</u>
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.     Does party/amicus have any parent corporations?  ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____      Date: _____2/22/2023_____

Counsel for: ESTATE OF KE ZHENGGUANG

Print to PDF for Filing

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT .....................................................5

COUNTER-STATEMENT OF THE ISSUES PRESENTED .................5

STATEMENT OF THE CASE...............................................................6

    A. The Parties' Contract .................................................................6

    B. The Hong Kong Arbitration ......................................................7

    C. Ms. Yu Fails to Comply with the Final Award .........................9

    D. The District Court Proceeding..................................................10

    E. The District Court Recognizes the Award................................11

    F. Following Supplemental Briefing and Further Arbitration Awards, the District Court Enters Judgment ...............................14

SUMMARY OF THE ARGUMENT ....................................................16

STANDARD OF REVIEW .................................................................18

ARGUMENT .....................................................................................18

    I.    THE DISTRCT COURT CORRECTLY HELD THAT *FORUM NON CONVENIENS* AND A FAILURE TO JOIN NECESSARY PARTIES ARE NOT AVAILABLE DEFENSES UNDER THE CONVENTION.18

    A. The U.S. Has a Strong Policy in Favor of Enforcing Arbitration Awards....18

    B. *Forum Non Conveniens* is Not an Enumerated Defense and is Incompatible with the Convention........................................20

C. Ms. Yu Miscontrues the District Court's Holding and Frames the Issue Too Broadly ............................................................................28

D. The Executive Branch's Views Do Not Support Ms. Yu's Argument and are Not Dispositve ........................................................................31

E. Rule 19 is Similarly Incompatible with Actions to Recognize and Enforce an Arbitration Award Under the Convention ...................................33

II.    THE COURT MAY AFFIRM THE DISTRICT COURT ON THE ALTERNATE GROUND THAT THE *FORUM NON CONVENIENS* AND RULE 19 FACTORS ARE NOT SATISFIED HERE ...................34

A. This Court May Reach the Merits in the First Instance ................................34

B. Ms. Yu Does Not Satisfy the *Forum Non Conveniens* Standard .................35

C. There Are No Missing Necessary Parties......................................................40

III.    THE DISTRICT COURT DID NOT ERR IN REJECTING MS. YU'S PUBLIC POLICY DEFENSE....................................................................42

A. Ms. Yu Has Not Met Her Burden to Establish the Applicability of any Public Policy Defense......................................................................................42

B. Ms. Yu's Public Policy Defense Does Not Require an Evidentiary Hearing ......................................................................................................46

IV.    THERE IS NO BASIS TO DISTURB THE DISTRICT COURT'S DECISION TO DENOMINATE THE JUDGMENT IN DOLLARS .....49

CONCLUSION ........................................................................................52

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Am. Dredging Co. v. Miller*,
510 U.S. 443 (1994) ........................................................................22

*Am. Gen. Life & Acc. Ins. Co. v. Wood*,
429 F.3d 83 (4th Cir. 2005) ..............................................................40

*AO Techsnabexport v. Globe Nuclear Servs. & Supply, Ltd.*,
404 F. App'x 793 (4th Cir. 2010) ......................................................18

*AO Techsnabexport v. Globe Nuclear Servs. & Supply, Ltd.*,
656 F. Supp. 2d 550 (D. Md. 2009) ...................................................19

*Balkan Energy Ltd. v. Republic of Ghana*,
302 F. Supp. 3d 144 (D.D.C. 2018) ...................................................45

*Base Metal Trading, Ltd. v. OJSC* "*Novokuznetsky Aluminum Factory*,"
283 F.3d 208 (4th Cir. 2002) ....................................................... 12, 30

*BCB Holdings Ltd. v. Gov't of Belize*,
110 F. Supp. 3d 233 (D.D.C. 2015) ...................................................42

*Caribbean S. S. Co., S. A. v. La Societe Navale Caennaise*,
140 F. Supp. 16 (E.D. Va. 1956) .......................................................48

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*,
2023 WL 185493 (S.D.N.Y. Jan. 13, 2023) ................................ 23, 37

*Chattery Int'l, Inc. v. JoLida, Inc.*,
2012 WL 1454158 (D. Md. Apr. 24, 2012) ........................................41

*City of Annapolis v. BP P.L.C.*,
2022 WL 15523629 (D. Md. Oct. 27, 2022)........................................32

*Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
2018 WL 10561511 (D. Col. Dec. 12, 2018) .....................................25

*Conkright v. Frommert*,
  556 U.S. 1401 (2009) ....................................................................32

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
  801 F. Supp. 2d 211 (S.D.N.Y. 2011) ........................................ 37, 38

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
  932 F. Supp. 2d 153 (D.D.C. 2013), *aff'd*, 603 F. App'x. 1 (D.C. Cir. 2015) .....49

*Denver Glob. Prods., Inc. v. Leon*,
  815 F. App'x 714 (4th Cir. 2020)...........................................18

*Devas Multimedia Private Ltd. v. Antrix Corp Ltd.*,
  No. 18-1360, (W.D. Wash. Apr. 16, 2019) ........................................25

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006) ...................................................34

*DiFederico v. Marriott Int'l, Inc.*,
  714 F.3d 796 (4th Cir. 2013) ................................................36

*Dow v. Jones*,
  232 F. Supp. 2d 491 (D. Md. 2002) ..........................................40

*dmarcian, Inc. v. dmarcian Europe BV*,
  60 F.4th 119 (4th Cir. 2023)................................................30

*Echenique v. Convergys*,
  473 F. App'x 323 (4th Cir. 2012)...........................................15

*ESAB Grp., Inc. v. Zurich Ins. PLC*,
  685 F.3d 376 (4th Cir. 2012)................................................18

*Fakhri v. Marriot Int'l Hotels, Inc.*,
  201 F. Supp. 3d 696 (D. Md. 2016) ...........................................19

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*,
  665 F.3d 384 (2d Cir. 2011) ........................................... *passim*

*Finney v. Guy*,
  189 U.S. 335 (1903)............................................................................48

*First Am. Title Ins. Co. v. W. Sur. Co.*,
  491 F. App'x 371 (4th Cir. 2012).......................................................34

*Hewlett-Packard Co. v. Berg*,
  61 F.3d 101 (1st Cir. 1995) ........................................................ 39-40

*Hosaka v. United Airlines*,
  305 F.3d 989 (9th Cir. 2002)..............................................................27

*Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*,
  2022 WL 4485277 (S.D.N.Y. Sept. 26, 2022), *order corrected on denial of
  reconsideration*, 2023 WL 2734433 (S.D.N.Y. Mar. 31, 2023) .........................48

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) .......................................................... 37, 52

*Intervest Int'l Equities Corp. v. Aberlich*,
  2013 WL 1316997 (E.D. Mich. Mar. 29, 2013)........................................... 40-41

*Jackson v. Kimel*,
  992 F.2d 1318 (4th Cir. 1993) ............................................................34

*Jones v. Dancel*,
  792 F.3d 395 (4th Cir. 2015)..............................................................18

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  335 F.3d 357 (5th Cir. 2003) ............................................................15

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  364 F.3d 274 (5th Cir. 2004), *cert. denied*, 543 U.S. 917 (2004) .....................33

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  190 F. Supp. 2d 936 (S.D. Tex. 2001),
  *judgment entered*, 2002 WL 32107930 (S.D. Tex. Feb. 20, 2002).....................42

*KT Corp. v. ABS Holdings, Ltd.*,
　2018 WL 3364390 (S.D.N.Y. July 10, 2018), *aff'd*,
　784 F. App'x 21 (2d Cir. 2019) ...................................................................39

*Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med.*,
　2013 WL 1245549 (S.D.N.Y. Mar. 26, 2013), *aff'd*,
　826 F.3d 634 (2d Cir. 2016) .......................................................................37

*LLC SPC Stileks v. Republic of Moldova*,
　985 F.3d 871 (D.C. Cir. 2021) ................................................................ 26-27

*Medellin v. Texas*,
　552 U.S. 491 (2008) .............................................................................. 30-31

*Melton v. Oy Nautor Ab*,
　161 F.3d 13 (9th Cir. 1998) .......................................................................27

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
　473 U.S. 614 (1985) ...................................................................................18

*Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
　311 F.3d 488 (2d. Cir. 2002) ........................................................... *passim*

*Olin Holdings Ltd. v. State of Libya*,
　2022 WL 864507 (S.D.N.Y. Mar. 23, 2022)............................................ 23, 38

*O'Reilly v. Bd. of Appeals of Montgomery Cnty, Md.*,
　942 F.2d 281 (4th Cir. 1991) .....................................................................34

*PaineWebber, Inc. v. Cohen*,
　276 F.3d 197 (6th Cir. 2001) .....................................................................41

*Phoenix Aktiengesellschaft v. Ecoplas, Inc.*,
　391 F.3d 433 (2d Cir. 2004) ......................................................................33

*Phonometrics, Inc. v. Westin Hotel Co.*,
　319 F.3d 128 (Fed. Cir. 2003) ...................................................................15

*Qing Yang Seafood Imp. (Shanghai) Co. v. JZ Swimming Pigs, Inc.*,
　2022 WL 2467540 (E.D.N.Y. Apr. 15, 2022)...............................................48

*Republic of Austria v. Altmann*,
 541 U.S. 677 (2004) ...................................................................32

*Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*,
 182 F. Supp. 3d 556 (E.D. Va. 2016) ...................................19

*Ruhrgas AG v. Marathon Oil Co.*,
 526 U.S. 574 (1999) ...................................................................30

*Sea-Roy Corp. v. Parts R Parts, Inc.*,
 1999 WL 111281 (4th Cir. Mar. 4, 1999) ............................51

*SEC v. Chenery Corp.*,
 318 U.S. 80 (1943) .....................................................................35

*Service & Training, Inc. v. Data Gen. Corp.*,
 963 F.2d 680 (4th Cir.1992) ....................................................34

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
 549 U.S. 422 (2007) ...................................................................36

*Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*,
 2016 WL 5793399, at *5 (S.D.N.Y. Sept. 30, 2016),
 *aff'd*, 741 F. App'x 832 (2d Cir. 2018) ......................... 37, 39

*Soho Wilmington LLC v. Barnhill Contracting Co.*,
 2019 WL 165708 (E.D.N.C. Jan. 10, 2019) ..........................40

*Sony Ericsson Mobile Commc'ns AB v. Delta Elecs. (Thailand) Pub. Co.*,
 2009 WL 1874063 (N.D. Cal. June 26, 2009) ......................38

*In re S. Afr. Apartheid Litig.*,
 617 F. Supp. 2d 228 (S.D.N.Y. 2009) ...................................31

*In re S. Afr. Apartheid Litig.*,
 624 F. Supp. 2d 336 (S.D.N.Y. 2009) ...................................32

*Steel Corp. of Philippines v. Int'l Steel Servs., Inc.*,
 354 F. App'x 689 (3d Cir. 2009) .................................... 35, 36

*Tahan v. Hodgson*,
    662 F.2d 862 (D.C. Cir. 1981) ....................................................... 43, 44

*Tatneft v. Ukraine*,
    21 F.4th 829 (D.C. Cir. 2021) ...............................................................26

*Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*,
    421 F. Supp. 2d 87 (D.D.C. 2006) .........................................................25

*TermoRio S.A .E.S.P. v. Electranta S.P.*,
    487 F.3d 928 (D.C. Cir. 2007) ..............................................................46

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
    411 F.3d 296 (D.C. Cir. 2005) .................................................... *passim*

*Ukrvneshprom State Foreign Econ. Enter. v. Tradeway, Inc.*,
    1996 WL 107285 (S.D.N.Y. 1996) ................................................. 44-45

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B*,
    825 F.2d 709 (2d Cir. 1987) ..................................................................46

*Westvaco Corp. v. United Paperworkers Int'l Union, AFL-CIO*,
    171 F.3d 971 (4th Cir. 1999) .................................................................43

*W.R. Grace & Co. v. Rubber Workers*,
    461 U.S. 757 (1983) ..............................................................................43

*Wultz v. Bank of China Ltd.*,
    942 F. Supp. 2d 452, 468 (S.D.N.Y. 2013) ..........................................47

## Statutes, Rules and Treaties

9 U.S.C. §§ 201-208 (Federal Arbitration Act) ..................................... 1, 13, 33, 40
28 U.S.C. § 1291 ..................................................................................5
28 U.S.C. § 1331 ..................................................................................5
Fed. R. Civ. P. 19(a) ................................................................... *passim*
New York Convention, Art. III ...................................................... *passim*
New York Convention, Art. V ...................................... 19, 20, 44, 45, 46

**Other Sources**

Matthew Adler, *Figueiredo v. Peru*: A Step Backward for Arbitration Enforcement, 32 Nw. J. of Int'l L. & Bus. 38A (2012) ...............................................................24

George A. Bermann, Procedures for the Enforcement of New York Convention Awards, Autonomous Versus Domestic Concepts Under the New York Convention, Franco Ferrari & Friedrich Jakob Rosenfeld (Eds.), Kluwer Law International (2021) .................................................................................................24

The International Commercial Disputes Committee of the Association of the Bar of the City of New York, *Lack of Jurisdiction and Forum Non Conveniens as Defenses to the Enforcement of Foreign Arbitral Awards*. 15 Am. Rev. int'l. Arb. 407 (2008) .................................................................................................................22

Lukas Lim, Four Roads Diverged in a Wood: Exploring the Various Interpretations of Article III of the 1958 New York Convention, Autonomous Versus Domestic Concepts Under the New York Convention, Franco Ferrari & Friedrich Jakob Rosenfeld (Eds.), Kluwer Law International (2021) ........................................ 24-25

Alan Scott Rau, *Errors of Comity: Forum Non Conveniens Returns to the Second Circuit*, 23 Am. Rev. Int'l Arb. 1 (2012)..............................................................21

Brief for the United States as *Amicus Curiae* in Support of Vacatur and Remand*, Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, No. 09-3925-cv(L) (2d Cir. Feb 25, 2011) ....................................................................31

Brief for the United States as *Amicus Curiae, Government of Belize v. Belize Social Development Ltd.*, No. 15-830 (December 2016) ...................................................32

Restatement (Third) U.S. Law of Foreign Relations. § 823(1) ....................... 49, 50

Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.11 ........................... 19, 25

## **INTRODUCTION**

In this appeal, Respondent-Appellant Yu Naifen Stephany ("Ms. Yu") asserts that the United States is not the proper forum for the enforcement of international arbitration awards against her, notwithstanding that she is a U.S. citizen and Maryland resident, and that she has deposited approximately $3.8 million with the District Court as security for the amount awarded to Petitioner-Appellee Estate of Ke Zhengguang (the "Estate") in the District Court's judgment. Ms. Yu's arguments that the awards can only be enforced in China (or that all arbitral parties are required to be joined in a proceeding to enforce the awards) disregard well-established caselaw regarding the enforcement of international arbitration awards. Indeed, one of the key purposes of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (commonly referred to as the "New York Convention," hereafter, the "Convention") is to facilitate enforcement of arbitration awards in signatory countries around the world, in order that enforcement can proceed against any or all arbitral parties in any signatory jurisdictions where such parties are present and have assets. The District Court properly confirmed the awards and entered judgment against Ms. Yu.

The Convention, as implemented by the Federal Arbitration Act, 9 U.S.C. §§ 201-208, (the "FAA") compels a court to recognize and enforce an award unless one of seven enumerated defenses are met. These enumerated defenses do not include

the doctrine of *forum non conveniens*.  Nor do they include any defense based upon a failure to join necessary parties (a defense that, in United States federal courts, is embodied in Rule 19 of the Federal Rules of Civil Procedure).  Although the Second Circuit has permitted *forum non conveniens* to be raised in enforcement proceedings under the Convention, no other Circuit to have addressed the issue agrees.  No Circuit court has ever authorized a Rule 19 defense to be raised in an enforcement proceeding under the Convention.  The better view is that these two defenses are not available in enforcement proceedings under the Convention, and the Estate respectfully submits that this Court (which has not yet addressed the issue) should hold accordingly here.

Indeed, *forum non conveniens* is fundamentally at odds with the concept of arbitration award enforcement.  The Convention permits winners of arbitral awards to enforce awards in any signatory nation, and the enforcement process often involves concurrent actions in different jurisdictions where award debtors' assets may be found.  Further, the United States has a strong policy in favor of arbitration, and for that reason the scope of review of arbitral awards is among the most narrow there is.  Enforcement proceedings are summary in nature.  They typically do not require any resolution of factual disputes, rendering most of the factors common to *forum non conveniens* analysis irrelevant.

Most importantly, no court other than a U.S. court can enforce an award against assets located in the United States. For this reason, the D.C. Circuit has taken the view that a respondent in such a case will not be able to identify an adequate alternate forum for enforcement, ending the *forum non conveniens* inquiry. The District Court here cited that precedent approvingly.

Rule 19 is similarly incompatible with the Convention. By its terms the Convention permits any prevailing party to enforce its award against any losing party. Thus, the concept of another party being "necessary" for an enforcement proceeding defeats the Convention's purpose and makes no sense, as noted by the District Court.

Even if this Court were to reach the merits of these defenses, however, the result would be the same for the reasons above. There is no adequate alternative forum and there is no missing "necessary party." Moreover, Ms. Yu resides in the District and has assets here. No witnesses or evidence are needed. Ms. Yu herself concedes that "where … the losing party subject to U.S. jurisdiction has assets in the United States but will not voluntarily pay the award—the defenses at issue here would falter from the start." *See* Respondent-Appellant's Brief, hereinafter "Br.," at 35. She attempts to distinguish this case by invoking the parties' business dealings in China as well as the "specific performance" components of the arbitral award concerning properties in China. But those matters *are not at issue in this case*;

Petitioner has not even requested that the District Court order specific performance of any aspect of the award.

With respect to Rule 19, Ms. Yu admits that she has already paid the other claimant in the arbitration, and the Estate seeks only its half of the award. Her claim that the other claimant is a "necessary party" would therefore fail even if Rule 19 was an available defense (which is it not).

Ms. Yu separately invokes the public policy defense in the Convention based on a claim that paying the judgment in U.S. dollars would somehow violate Chinese currency control laws. As an initial matter, the public policy defense pertains to the public policy *of the forum state*: here, the United States, not China. Ms. Yu's attempts to transform a purely Chinese policy concern into a U.S. one by invoking "comity" concerns have no basis in law. Moreover, Ms. Yu's only "evidence" that a payment made *outside* China to satisfy a U.S. court judgment could implicate a Chinese foreign exchange law was an affidavit from her own law firm in this action, opining that such a payment *might* violate Chinese law. The District Court correctly rejected Ms. Yu's speculative assertions regarding the application of Chinese law to such a payment. This Court should affirm.

Finally, Ms. Yu appeals—without any identified legal basis—the currency of the award, which the District Court denominated in U.S. dollars. The District Court concluded that it was not required to denominate the award in Chinese renminbi

(RMB) as Ms. Yu requested —and noted the general preference of U.S. courts to award judgments in U.S. dollars. The District Court's decision to convert the award into U.S. dollars is supported by ample authority (particularly in the D.C. Circuit) holding that an arbitration award may be converted into a U.S. dollar judgment at the request of the petitioner.

For all of these reasons and as more fully explained herein, the District Court's judgment should be affirmed.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under one of the "treaties of the United States," 28 U.S.C. § 1331, namely, the Convention. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the appeal is from the District Court's "final decision[]," 28 U.S.C. § 1291, namely the Consolidated Final Judgment (JA2161-2162), which disposed of all the parties' claims.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED

1. Whether *forum non conveniens* and Rule 19 non-joinder are available defenses in an action to enforce an arbitration award under the Convention, where (i) the respondent resides in the District where enforcement is sought, and (ii) was a signatory to the underlying arbitration agreement? The District Court correctly concluded that they are not.

2. To the extent *forum non conveniens* or Rule 19 non-joinder are available defenses, whether Appellant has met her burden to demonstrate that this case should be dismissed due to either or both of these defenses?  The District Court did not reach the merits of the *forum non conveniens* defense.  The District Court correctly determined that additional parties are not required to be joined.

3. Whether Appellant's speculative claim that she may incur liability under Chinese law by making payment outside China to satisfy a U.S. judgment satisfies her high burden of demonstrating that there is a U.S. public policy that provides a defense to enforcement under the Convention?  The District Court correctly held that Appellant had failed to meet her burden of establishing such a defense.

4. Whether the District Court was required to enter judgment in Ms. Yu's preferred currency, RMB, when the Estate requested a judgment in U.S. dollars?  The District Court correctly held that it was not.

## STATEMENT OF THE CASE

### A. The Parties' Contract

The Estate is the Hong Kong-domiciled estate of Ke Zhengguang ("Mr. Ke"). JA358 at ¶ 5.  The administrators of the Estate are Zhang Yuejin and Ke Yeying (the "Administrators"), Mr. Ke's widow and daughter. *Id*.

Ms. Yu is a U.S. citizen residing in the State of Maryland. *Id*. at ¶ 6.

On April 28, 2010, Mr. Ke, Ms. Yu and other parties entered into an agreement to restructure and divide their interests in Oasis Investment Group Limited ("Oasis"), a partnership which bought and developed property in China through various subsidiaries (the "Agreement"). JA32-41.  The Agreement set forth a detailed series of transactions through which the parties' interests in Oasis would be divided, including equity transfers and cash payments. JA33-39.

Article 2.2.1 of the Agreement set forth the parties' payment obligations, and required the parties to pay the Hong Kong Dollar equivalent of certain amounts denominated in RMB. JA34-35.  The RMB is the official currency of the People's Republic of China ("PRC").

Article 4.2 of the Agreement provided that any disputes relating to the agreement could be submitted to arbitration before the Hong Kong International Arbitration Centre. JA39.

## B. The Hong Kong Arbitration

Disputes arose during the parties' attempts to implement the Agreement, and in February 2013, non-party Xu Hongbiao ("Mr. Xu") and Mr. Ke, the non-controlling shareholders of Oasis, filed a notice of arbitration against Oasis and its controlling shareholders: Ms. Yu and her two sisters. JA109-112 ¶¶ 1, 3, 7, 13.  The arbitral tribunal was officially constituted on June 4, 2013. JA112 ¶ 11.  After Mr.

Ke's death in late 2013, the Administrators were granted letters of administration by the High Court of Hong Kong to administer the Estate, and the arbitral tribunal permitted the Estate to join the arbitration. JA117 ¶ 37, JA126 ¶ 79, JA130 ¶ 100.

The arbitration hearing commenced on May 16, 2017 and was held on consecutive days until May 25, 2017. JA147 at ¶ 181.  On August 8, 2017, the arbitral tribunal held a further hearing for closing arguments. *Id.*  On February 28, 2018, the arbitral tribunal issued a Final Arbitration Award (the "Final Award") "after carefully reviewing and evaluating the evidence, witness statements, written statements and other documents provided by the parties concerned." JA168 ¶ 223, JA213.

The Final Award set forth nine Orders. JA203-204.  The Orders included provisions for various property transfers (Orders 1, 2 and 3), as well as share transfers and associated administrative and regulatory requirements (Orders 5, 6, and 7). *Id.*  Order 8 required Ms. Yu to pay certain amounts after the completion of the transactions contemplated by Orders 1 through 6.  Order 9 required Ms. Yu and her sisters to pay approximately ten million RMB in damages to the Estate and Mr. Xu. JA204 ¶ 9.  Ms. Yu was held jointly and severally liable for the amount awarded in Order 9. *Id.*

In April 2018, the Estate submitted an application to interpret, correct, or supplement the Final Award. JA271 ¶ 15.  On December 19, 2018, the arbitral

tribunal issued an award clarifying the Final Award (the "Clarification Award"). JA1937 at ¶ 36.  The Clarification Award made no substantive changes to the Final Award; it made only a procedural change to Order 2 and a name change to Order 7 (both such changes were unopposed). JA362 at ¶ 21.

### C. Ms. Yu Fails to Comply with the Final Award

Ms. Yu failed to comply with nearly all of her obligations under the nine Orders of the Final Award, including the monetary payment obligation to the Estate under Order 9. JA19 ¶ 21, JA1190 ¶ 11, JA1191 ¶ 13.

With respect to Order 9, Clauses 2.1.4 and 2.2.1 of the Agreement state that the cash components of the agreement are to be paid in Hong Kong with Hong Kong dollars. JA34-35.  Clause 2.2.1 provides the RMB equivalent of these Hong Kong dollar figures. *Id.*  While the Final Award provides for monetary awards denominated in RMB, these amounts were derived from the RMB reference amounts in the Agreement; the Final Award does not require that payment be made in RMB. JA204 ¶ 9.

Checks or wires issued in RMB from a mainland PRC financial institution cannot be cashed or sent to banks within Hong Kong. JA1194 ¶ 17.  The Estate advised Ms. Yu that it is willing and able to accept payment in RMB, but that such payment must be made through a check that can be deposited at a bank in Hong Kong. *Id.* ¶ 16.  Ms. Yu refused to do so. *Id.*  In late December 2018, Ms. Yu

attempted to make payment via a check denominated in RMB (with a 10-day expiration). *Id*. ¶ 17. Ms. Yu was aware that the check could not be deposited in Hong Kong, and the Estate was unable to deposit the check. *Id*.

### D. The District Court Proceeding

On November 16, 2018, the Estate initiated this action by filing a petition to recognize and enforce Order 9 of the Final Award. JA1569. On March 4, 2019, after the Clarification Award was issued, the Estate filed an Amended Petition, seeking recognition and enforcement of the Final Award in its entirety. JA357-366. With respect to the monetary award in Order 9 of the Final Award, the Estate sought judgment in the amount of $750,824.53 (which represented 50% of the award) with pre-judgment and post-judgment interest. JA366. Ms. Yu moved to dismiss the action on the grounds that (i) because the first eight Orders of the Final Award related to property and interests in China, the action should be dismissed based on the doctrine of *forum non conveniens*, and (ii) Mr. Xu and Oasis were not parties to the District Court proceeding and were each a necessary party under Rule 19 of the Federal Rules of Civil Procedure.

Ms. Yu further argued that if the District Court entered a judgment on Order 9 in any currency other than RMB, it would place Ms. Yu at risk of violating China's currency control laws, and therefore any such judgment would violate the public policy provision of the Convention. Ms. Yu requested that any damages award in

the judgment be denominated in RMB. JA389-445. In support of this contention, Ms. Yu submitted two declarations from a Beijing-based partner at Steptoe & Johnson LLP (the law firm representing Ms. Yu in this action) that identified no instances in which a payment outside China was held to violate Chinese foreign exchange restrictions. JA971-982, JA1295-1304.

The Estate opposed Ms. Yu's motion on the grounds that (i) *forum non conveniens* and Rule 19 were not proper defenses to an action to recognize and confirm an arbitration award under the Convention; (ii) dismissal on *forum non conveniens* grounds would not be warranted because of the summary nature of the proceeding and because the only matter at issue was a cash payment sought to be satisfied by Ms. Yu's assets in the District; (iii) Mr. Xu was not a necessary party because the Convention permits any party to enforce an award against any other party and Ms. Yu was held jointly and severally liable for the amounts awarded by the arbitral tribunal (and in any event the Estate was only seeking its half of the amounts awarded and Ms. Yu had already paid the other half to Mr. Xu); and (iv) payment in U.S. or Hong Kong dollars did not violate Chinese law. JA1158-1186.

### E. The District Court Recognizes the Final Award

The District Court granted the Amended Petition in a decision dated February 24, 2020. With respect to *forum non conveniens*, the District Court considered and rejected Ms. Yu's argument that, because the doctrine has been referred to as

"procedural" by federal courts in other contexts, it was a proper defense under
Article III of the Convention (which leaves procedural matters to the enforcement
forum). JA1573-1576.  The Court evaluated the conflicting decisions of the two
circuits that have expressly addressed the issue (the Second Circuit and D.C. Circuit)
in light of the pro-enforcement nature of the Convention and summary nature of an
enforcement proceeding, and specifically noted Judge Lynch's dissent in *Figueiredo
Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir.
2011) ("the 'procedure' provisions of the treaties permit variation with regard to the
manner in which signatory states enforce international arbitration awards; they do
not provide a means by which a state may decline to enforce such awards at all.").
*Id.*  The District Court acknowledged that the Fourth Circuit has previously
dismissed an enforcement action under the Convention for lack of personal
jurisdiction, a defense which has also been termed "procedural" in federal case law,
*see Base Metal Trading, Ltd. v. OJSC* "*Novokuznetsky Aluminum Factory*," 283 F.3d
208, 215 (4th Cir. 2002), and distinguished it because personal jurisdiction is a
prerequisite for a U.S. court to award *any* relief. *Id.*  The District Court further noted
that such a defense was unavailable to Ms. Yu, a U.S. citizen and resident of the
District. JA1575.  The Court noted that it was "not reviewing the merits of the case
such that a discussion of the most convenient forum … is needed" and that *forum*

*non conveniens* was not one of the Convention's enumerated defenses. *Id.* The Court therefore did not reach the merits of the *forum non conveniens* argument.

The District Court also rejected Ms. Yu's Rule 19 argument, finding it inapplicable under the FAA, which permits "any party to the arbitration [to] apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." JA1575 (citing 9 U.S.C. § 207). The Court further noted that Rule 19 was not an enumerated defense under the Convention. JA1576.

The Court also rejected Ms. Yu's public policy defense, holding that the Convention's defense is to be "construed extremely narrowly" and is limited to the public policies of the forum (*i.e.*, the United States), whereas Ms. Yu had argued that the action violated China's public policy. JA1577. The Court also noted that Ms. Yu had not cited any authority for her claim that making payment to satisfy a U.S. judgment denominated in dollars would violate Chinese law, and that it saw no reason why a payment made outside of China would trigger a Chinese law that addressed whether and how money could leave China. JA1578.

Finally, the Court granted the Estate's request for a judgment in U.S. dollars, noting that, while courts have more recently issued judgments in foreign currencies, the historical position was to denominate them in U.S. dollars and that the Estate had requested that currency. JA1579-1582. However, because there remained some

uncertainty about the applicable exchange rate and the amount of pre and post-judgment interest due, the Court ordered the parties to submit an agreed form of judgment or (if the parties could not agree) proposed forms of judgment together with a letter containing a concise summary of each party's position with respect to the exchange rate and pre- and post-judgment interest, and the legal support for it JA1583-1584.

### F.  Following Supplemental Briefing and Further Arbitration Awards, The District Court Enters Judgment

On March 16, 2020 and June 26, 2020, before the District Court's February 2020 decision was reduced to a judgment, the arbitral panel issued two further awards concerning costs and interest, both requiring payment in Hong Kong Dollars. JA330-343.  In August 2020, the Estate filed a separate action in the District Court to enforce those supplemental awards. JA210-346.  In October 2020, the parties entered into a stipulation (which was later approved by the District Court) consolidating the two cases, and deeming the arguments made with respect to the first case preserved for purposes of the second. JA1624-1628.  Because of disagreements related to the form of a single consolidated judgment, the parties stipulated to a briefing schedule in which each party would present its proposed form of consolidated judgment to the Court. JA1626; JA1627 ¶¶ 4-6.  In December 2020, briefing on the parties' respective proposed forms of judgment was completed. JA1627.

In November 2020, Mr. Xu filed an action in Hong Kong, seeking to enforce the Final Award. JA2011-2015.  On April 29, 2021, Ms. Yu filed counterclaims against the Estate and Mr. Xu in that Hong Kong proceeding, which remains pending. JA1920.  Ms. Yu sent the District Court correspondence concerning the Hong Kong proceedings, *see* JA1585-1587, JA1604-1605, JA1919-1920, and JA1977-1978, but never moved for reconsideration of the District Court's February 24, 2020 decision or sought any other relief based upon the Hong Kong proceedings.[1]

On January 9, 2023, the District Court entered a Consolidated Final Judgment which confirmed the Final Award (as clarified by the Clarification Award) as well as the March 16, 2020 and June 26, 2020 awards, and entered judgment in favor of

---

[1] Ms. Yu's Brief contains extensive discussion of these pending proceedings in Hong Kong as well as a different enforcement proceeding that an Oasis affiliate filed in April 2019 in mainland China, which is no longer pending. Br. at 16-21.  Evidence of these proceedings was not before the District Court when it rendered its February 24, 2020 decision on the applicability of *forum non conveniens* and Rule 19, and therefore should not be considered by this Court.  *See Echenique v. Convergys*, 473 F. App'x 323, 324 (4th Cir. 2012) ("To the extent that [appellant] seeks to present new evidence on appeal, we decline to consider it.") (citing *Phonometrics, Inc. v. Westin Hotel Co.*, 319 F.3d 128, 1333 (Fed. Cir. 2003) ("We, as a court of review, generally do not consider evidence that has not been considered by the district court.").  In any event, as the District Court noted, in the international arbitration context, it is routine for enforcement proceedings to be brought in multiple jurisdictions. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 367-68 (5th Cir. 2003) ("multiple judicial proceedings on the same legal issues are characteristic of the confirmation and enforcement of international arbitration awards under the Convention").

the Estate and against Ms. Yu in the amount of $3,614,772.78. JA2161-2162.  On the same day, the District Court also issued a Memorandum Opinion explaining its calculation of the amount awarded to the Estate in the judgment. JA2151-2160.  Ms. Yu deposited approximately $3.8 million with the District Court as security for the judgment. (JA9 (Dkt. No. 88)).  This appeal followed. JA2163-2164.

## SUMMARY OF THE ARGUMENT

This Court should affirm the judgment because the District Court correctly determined that *forum non conveniens* and Rule 19 non-joinder are not available defenses in enforcement proceedings under the Convention and because the Convention permits any party to an arbitration to proceed unilaterally to enforce the award against any adverse party to the arbitration.

To the extent the Court finds that these defenses may be considered, this Court should affirm on the alternative ground that Ms. Yu, as a Maryland resident with assets in the district, cannot meet her burden to override the Estate's choice of forum, and because, as the D.C. Circuit has held, Ms. Yu cannot establish the existence of an adequate alternative forum because only a U.S. court can enforce an award against U.S. assets.

Ms. Yu similarly cannot establish the absence of a necessary party because (i) the Convention does not require all parties to be joined in an enforcement proceeding, (ii) Ms. Yu was held jointly and severally liable for the monetary amount

16

awarded by the arbitral tribunal, and (iii) Ms. Yu concedes she has already paid half of the awarded amount to the purported missing party.

The Court should also affirm the District Court's determination that enforcement of the awards would not violate U.S. public policy. The District Court correctly determined that Ms. Yu's invocation of hypothetical and unsubstantiated claims that enforcement of the awards might violate a Chinese currency control law did not satisfy her high burden and in any event that the Convention is concerned with public policy of the forum state, here the United States, and not China. No evidentiary hearing is required because the disputed issue is purely one of foreign law, which the District Court already evaluated and which this Court is able to do on the record.

The Court should also affirm the District Court's decision to denominate the judgment in U.S. dollars, which the Estate requested. The weight of authority is that foreign currency arbitration awards may be converted to U.S. dollar judgments at the request of the petitioner. Ms. Yu provides no authority to support her contention that the judgment should have been issued in RMB — which was not called for by the underlying contract. Further, other district courts have denominated judgments stemming from Chinese arbitral disputes in U.S. dollars.

## STANDARD OF REVIEW

On an appeal of a judgment enforcing an international arbitration award under the Convention, this Court reviews the district court's legal determinations *de novo* and any associated findings of fact for clear error.  *See Denver Glob. Prods., Inc. v. Leon*, 815 F. App'x 714, 719 (4th Cir. 2020) (citing *AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd.*, 404 F. App'x 793, 797 (4th Cir. 2010)).

## ARGUMENT

I.   **THE DISTRICT COURT CORRECTLY HELD THAT *FORUM NON CONVENIENS* AND A FAILURE TO JOIN NECESSARY PARTIES ARE NOT AVAILABLE DEFENSES UNDER THE CONVENTION**

### A. The U.S. Has a Strong Policy in Favor of Enforcing Arbitration Awards

The Convention governs the enforcement of foreign arbitral awards in signatory countries.   The United States is a signatory to the Convention and has an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 390 (4th Cir. 2012).

Judicial review of an arbitration award under the Convention is accordingly "severely circumscribed" and "among the narrowest known at law." *Jones v. Dancel*, 792 F.3d 395, 401 (4th Cir. 2015) (internal citation omitted).  An enforcing court is not reviewing the merits of the case. "The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a

judgment of the court.'" *Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*, 182 F. Supp. 3d 556, 564 (E.D. Va. 2016) (internal citations omitted). Courts in this Circuit, consistent with federal courts throughout the country, have held that in a proceeding to recognize and enforce a foreign award, a district court "*must* enforce an arbitration award unless it finds one of the grounds for refusal or deferral of recognition or enforcement specified in the Convention." *Fakhri v. Marriot Int'l Hotels, Inc*., 201 F. Supp. 3d 696, 711 (D. Md. 2016) (internal citation and quotation omitted) (emphasis added); *see also AO Techsnabexport*, 656 F. Supp. 2d 550, 559 (D. Md. 2009) ("the Court finds that this argument is not among the seven defenses enumerated in the Convention"); RESTATEMENT (THIRD) U.S. L. INT'L COMM. ARB. § 4.11 cmt. c, TD No 2 (2012) ("In the interest of uniformity and certainty, and consistent with U.S. obligations under the Conventions, a court may not vacate or deny confirmation, recognition, or enforcement of a Convention award on a ground other than those specified in the New York or Panama Convention.").

Accordingly, "[t]he party opposing confirmation bears the heavy burden of proving the applicability of the Convention's enumerated defenses." *AO Techsnabexport*, 656 F. Supp. 2d at 554 (citation omitted).

Article V of the Convention sets forth the limited, exclusive grounds on which a court may decline to recognize or enforce a foreign award. Convention, Art. V.1. Recognition and enforcement may also be refused if the reviewing court finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country."

*Id.* Art. V.2.

The Convention does not specify the manner in which enforcement should take place, instead expressly reserving that issue to the law of the place where enforcement under the Convention is sought. *See* Convention, Art. III (requiring enforcement occur "in accordance with the rules of procedure of the territory where the award is relied upon."). The only limitation in this regard is that such rules of procedure may not impose "substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards." *Id.*

## B. *Forum Non Conveniens* **is Not an Enumerated Defense and is Incompatible with the Convention**

*Forum non conveniens* is not one of the Convention's enumerated defenses. No court in the Fourth Circuit has recognized it as a defense to enforcement of an arbitral award under the Convention.

Seeking to make new Fourth Circuit law, Ms. Yu relies on two inapposite Second Circuit decisions allowing a *forum non conveniens* defense under the "rules of procedure" provision in Article III of the Convention (*Monegasque* and

*Figueiredo*, discussed below). Br. at 28-30.  Ms. Yu ignores, however, that those are also the only two cases in which any court in the Second Circuit actually dismissed on this ground because they presented unique circumstances—not present in this case—involving foreign sovereigns and enforcement attempts against non-signatories to an arbitration agreement.  These cases do not support Ms. Yu's contention that a *forum non conveniens* defense should be available in any enforcement proceeding under the Convention, or in this case.

The Second Circuit first entertained this defense in *Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488 (2d. Cir. 2002).  In that action, the petitioner sought to enforce an award against a non-signatory to an arbitration agreement that was also a foreign sovereign, Ukraine, and which had no identified assets within the United States.  Because the question of whether Ukraine should be bound by the underlying agreement turned on principles of Ukrainian law (and required evidence that could be obtained only through discovery in Ukraine), the Second Circuit affirmed dismissal on *forum non conveniens* grounds, finding it a valid procedural defense under Article III of the Convention. *Id.* at 495-498, 500-501.  The key issue in *Monegasque* was therefore the validity of an award against a non-signatory to the arbitration agreement; no such issue is presented in this case.[2]

---

[2] Some commentators have noted that *forum non conveniens* may be available in actions against non-signatories. *See* Alan Scott Rau, *Errors of Comity: Forum Non Conveniens Returns to the Second Circuit*, 23 AM. REV. INT'L ARB. 1, 13, 15 (2012);

The Second Circuit also dismissed on *forum non conveniens* grounds in *Figueiredo Ferraz E Engenhariade Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011) (repeatedly cited by Ms. Yu), based on Peru's claim that the award was contrary to a domestic law limiting the amount of the annual budget the Peruvian government could spend on satisfying judgments. The Second Circuit reasoned that a *forum non conveniens* defense is permissible in an enforcement action under the Convention because the defense has been characterized as "procedural" in other contexts.[3] Significantly, however, the *Figueiredo* court noted that it was addressing a "case where the parties and the underlying dispute have no connection at all to this country." *Id*. at 394 n.11.

Unlike *Monegasque* and *Figueiredo*, Ms. Yu here is a private citizen who has a clear connection to this forum because she is a resident of Maryland, and the dispute is over private business dealings only—no public funds are involved. There is also no dispute that Ms. Yu is bound by the underlying arbitration agreement. Thus, *Monegasque* and *Figueiredo* do not support Ms. Yu's *forum non conveniens*

---

The International Commercial Disputes Committee of the Association of the Bar of the City of New York, *Lack of Jurisdiction and Forum Non Conveniens as Defenses to the Enforcement of Foreign Arbitral Awards*, 15 Am. Rev. Int'l. Arb. 407, 411, 430-431, 435 (2008).

[3] In finding *forum non conveniens* to be a "procedural" defense, the Second Circuit relied principally on *Am. Dredging Co. v. Miller*, 510 U.S. 443 (1994), an admiralty case dealing with a pre-emption issue. *Figueiredo*, 665 F.3d at 392.

defense in the circumstances here. Indeed, while permitting the defense to be considered, no court in the Second Circuit has subsequently dismissed on *forum non conveniens* grounds, which only warrants dismissal "[i]n a proper case." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, <u>2023 WL 185493</u>, at *3 (S.D.N.Y. Jan. 13, 2023).

Additionally, the *Figueiredo* decision provoked a long and well-reasoned dissent and has been roundly criticized.[4]  Judge Lynch questioned in dissent whether the Convention's "references to … "rules of procedure" can bear the weight that the *Monegasque* court and, today, the majority put on them.  Though it is true that the Supreme Court has labeled *forum non conveniens* a "doctrine … of procedure" for federal preemption purposes … there is little reason to think that the drafters of the treaties, who were drawn from a variety of legal traditions, considered what impact this rather technical and distinctly American use of the term might have on the enforceability of international arbitration awards." <u>Id</u>. at 399.  Judge Lynch further observed that:

> "[M]ost observers considered that [the 'procedure'] provision related to the *form* of enforcement, not the *conditions* for enforcement." In other words, the "procedure" provisions of the treaties permit variation with regard to the manner in which signatory states enforce international arbitration awards; they do not provide a means by which a state may decline to enforce such awards at all.

---

[4] The Second Circuit has been asked to overrule *Figueiredo* in a currently pending appeal.  *See* <u>Br. for Petitioner-Appellee</u>, *Olin Holdings Ltd. v. State of Libya*, No. 22-825, at 36-56 (2d Cir.).

*Id.* (internal citations omitted) (emphasis in original). *See also* George A. Bermann, Procedures for the Enforcement of New York Convention Awards, AUTONOMOUS VERSUS DOMESTIC CONCEPTS UNDER THE NEW YORK CONVENTION, Franco Ferrari & Friedrich Jakob Rosenfeld (Eds.), Kluwer Law International (2021), at 56-57 (drawing a distinction between "rules of a procedural character that govern the question of 'how' enforcement is to be conducted, on the one hand, and rules of a procedural character that effectively determine "whether" enforcement is to be had at all, on the other."); Matthew Adler, *Figueiredo v. Peru*: A Step Backward for Arbitration Enforcement, 32 NW. J. OF INT'L L. & BUS. 38A, at 39A (2012) (*Figueiredo* "managed to mangle several doctrines at once" because it: (1) failed to recognize that *forum non conveniens* "should be narrowly restricted" and applies to cases which involve "the trial of underlying facts and not to the enforcement of a resulting award or judgment;" and (2) seemed to try to apply the public policy exception of the New York Convention to argue in favor of *forum non conveniens* as an applicable defense." Therefore, "[b]y cloaking its public policy holding in [*forum non conveniens*] garb, the Second Circuit misapplied one doctrine, misstated another, and left enforcement of future international arbitration awards—at least in the critical commercial center that is New York—potentially in considerable disarray."); Lukas Lim, Four Roads Diverged in a Wood: Exploring the Various Interpretations of Article III of the 1958 New York Convention, in AUTONOMOUS VERSUS

DOMESTIC CONCEPTS UNDER THE NEW YORK CONVENTION, INTERNATIONAL
ARBITRATION LAW LIBRARY at 79, 85 ("virtually all major commentators have
criticized [the Second Circuit's] approach."). *Figueiredo* is also not in accord with
the Restatement, which takes the position that *forum non conveniens* is not an
available defense to an enforcement action. RESTATEMENT (THIRD) U.S. L. INT'L
COMM. ARB. § 4.27.

It is notable that, in the years since *Monegasque* was decided, no U.S. court
other than the *Figueiredo* court has dismissed an enforcement case on *forum non*
*conveniens* grounds, putting the District Court in good company. *See, e.g.*, *Devas*
*Multimedia Private Ltd. v. Antrix Corp Ltd*., <u>No. 18-1360</u> (W.D. Wash. Apr. 16,
2019), Minute Order at 2; *Compañía de Inversiones Mercantiles S.A. v. Grupo*
*Cementos de Chihuahua S.A.B. de C.V.*, <u>2018 WL 10561511</u> at \*9 (D. Col. Dec. 12,
2018).[5]

---

[5] The sole case other than *Monegasque* and *Figueiredo* that Ms. Yu cites as having
dismissed an action on *forum non conveniens* grounds, *Termorio S.A. E.S.P. v.*
*Electrificadora Del Atlantico S.A. E.S.P.*, <u>421 F. Supp. 2d 87</u>, 92,104 (D.D.C. 2006),
*see* Br. at 32, did no such thing. That case involved multiple claims, including an
enforcement claim and a breach of contract claim. The district court had already
dismissed the enforcement claim under the enumerated defense that the award had
been vacated by a court in the country where the arbitration had taken place. It then
held that in the alternative, because of the accompanying breach of contract claim,
the action should be dismissed on *forum non conveniens* grounds. *Id.* at 104.

The D.C. Circuit, on which the District Court relied, has taken a more reasoned view that considers the context and function of the Convention. In *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), a Ukrainian government-owned respondent asserted a *forum non conveniens* defense. The D.C. Circuit noted that the respondent "has the burden of showing there is another forum adequate to the plaintiff's case." *Id.* at 303. However, "only a court of the United States … may attach the commercial property of a foreign nation located in the United States," and because "no other forum" was available to attach any of the respondent's United States assets, the respondent's *forum non conveniens* defense was properly rejected. *Id.*

While the D.C. Circuit did not state categorically that *forum non conveniens* is not a defense under the Convention, that is the practical result of its holding in *TMR*, because a respondent would never be able to identify an adequate alternative forum for an action to enforce an award against an arbitral respondent's existing or potential assets located within the United States.[6] The D.C. Circuit has continued to affirm this view. *See, e.g.*, *Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021); *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 876 n.1 (D.C. Cir. 2021). It

---

[6] For this reason, there is no merit to Ms. Yu's contention that no circuit split exists. Br. at 34-35.

was asked in *Stileks* to reconsider *TMR* in light of the *Figueiredo* decision and declined to do so. *Id.* at 876 n.1.

The Ninth Circuit declined to address the question,[7] but a dissenting justice in a case involving the issue concluded: "were I to reach the merits of the *forum non conveniens* issue, I would reverse the district court's invocation of the doctrine." *Melton v. Oy Nautor Ab*, 161 F.3d 13, at *2 (9th Cir. 1998) (Tashima, J., dissenting).

Other international treaties have been held not to permit application of the *forum non conveniens* doctrine.  In *Hosaka v. United Airlines, Inc.*, for example, the Ninth Circuit held that Article 28(1) of the Warsaw Convention "overrides the discretionary power of the federal courts to dismiss an action for *forum non conveniens.*" 305 F.3d 989, 993 (9th Cir. 2002).  Reasoning that the Warsaw Convention sought to create uniform rules of jurisdiction and liability, the Ninth Circuit declined to "infer from the treaty's incorporation of local procedural law that the drafters acquiesced in the application of *forum non conveniens*, a concept that was (and is) both alien to and unwelcome by the majority of the contracting parties." *Id.* at 999.  The court expressed concern about subjecting a treaty intended to limit

---

[7] In that case, which pre-dated *Monegasque*, the petitioner had not raised the argument that *forum non conveniens* was not available under the Convention in the trial court, and the Ninth Circuit therefore deemed it waived.  However, the Ninth Circuit noted that "[w]e express no opinion as to interpretation of the Convention on the Recognition of Foreign Arbitral Awards." *Melton v. Oy Nautor Ab*, 161 F.3d 13, at *1 (9th Cir. 1998).

the contracting states' exercise of discretion to "a doctrine that is itself vague and discretionary." *Id.* at 997.

Judge Lynch concluded his dissent on this issue in *Figueiredo* by noting that his observations may "be of use in persuading other courts that are not bound by its authority to give further thought to the issue." 665 F.3d at 399. This Court is in a position to do so. It should reject the Second Circuit's overbroad view of "procedure," evaluate the appropriateness of *forum non conveniens* to an enforcement action under the Convention, and affirm the District Court's decision.

### C. Ms. Yu Misconstrues the District Court's Holding and Frames the Issue Too Broadly

Ms. Yu asks this Court to decide whether any and all "procedural defenses" are available under Article III of the Convention. Br. at 6. There is no need for this Court to issue such a sweeping ruling. While Article III provides for matters of "procedure" to be governed by the forum of enforcement, it is not necessary for this Court to decide what "procedure" means in all enforcement cases arising under the Convention. Rather, the relevant question here is whether it is appropriate to consider the doctrines of *forum non conveniens* and necessary parties in the circumstances of this case.

The District Court's approach is instructive, because it did not categorically reject "procedural" defenses merely because they were not enumerated in the

Convention, but rather considered the availability of each procedural defense on its own merits.

Thus, on the one hand, the District Court held that a *forum non conveniens* defense is not available in this case because of the summary nature of the proceeding, and cited *TMR*, which did not explicitly find the defense precluded as a matter of law, but as a practical matter because only U.S. courts have jurisdiction to enforce awards against assets located in the United States.[8] JA1575. The District Court similarly rejected Ms. Yu's necessary parties defense because the Convention's implementing legislation, the FAA, expressly permits any party to an award to enforce an award against any other party. *Id*.

On the other hand, the District Court agreed with Ms. Yu's contention that personal jurisdiction—which has been characterized in U.S. courts as a matter of procedure—is an applicable defense notwithstanding that it not expressly enumerated in the Convention. JA1575.

There is no merit to Ms. Yu's argument that because some courts have dismissed arbitration enforcement actions on personal jurisdiction and statute of limitations grounds, any procedural defense is a valid defense to enforcement of an award under the Convention. Br. at 29-31.

---

[8] The D.C. Circuit's holding on its face concerned only property in the United States belonging to foreign sovereigns, *TMR*, 411 F.3d at 303, but the holding is equally applicable to private parties with property in the United States.

Contrary to Ms. Yu's contention, personal jurisdiction is mandated by the Due Process Clause of the Fifth and Fourteenth Amendments. *dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 131 (4th Cir. 2023) ("A federal district court may exercise personal jurisdiction over a foreign corporation only if … [it] is consistent with the Due Process Clause of the Fourteenth Amendment.").

It is for this reason, and not (as Ms. Yu claims) that personal jurisdiction is "protected by" Article III of the Convention, Br. at 30, that a personal jurisdiction defense is available in enforcement actions. Indeed, this Court stated that the Convention "does not confer personal jurisdiction when it would not otherwise exist," and that "a plaintiff still must demonstrate that personal jurisdiction is proper under the Constitution." *Base Metal*, 283 F.3d at 211. As the District Court noted, personal jurisdiction is "an essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication." JA1575 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999) (internal citation omitted)).

As for the statute of limitations, the source of this defense is found in the FAA, not the Convention. There is therefore no need to look to Article III as a basis to apply a statute of limitations defense, because it is mandated by the terms of the very legislation Congress enacted to implement the Convention. *See Medellin v. Texas*, 552 U.S. 491, 526 (2008) ("The terms of a non-self-executing treaty can become

domestic law only in the same way as any other law—through passage of legislation

… .").

### D. The Executive Branch's Views Do Not Support Ms. Yu's Argument and Are Not Dispositive

Ms. Yu's invocation of the purported position of the Executive Branch is no

more availing. Br. at 27-28.  Ms. Yu relies on an amicus brief submitted by the

Executive Branch over a decade and two presidential administrations ago in

*Figueiredo* that was largely focused on public policy issues raised by Peru and only

noted in summary fashion that *forum non conveniens* was procedural in nature and

therefore proper, citing applicable Second Circuit precedent. *See* Brief for the United

States as *Amicus Curiae* in Support of Vacatur and Remand, *Figueiredo Ferraz E*

*Engenharia de Projeto Ltda. v. Republic of Peru*, No. 09-3925-cv(L), at 21-22 (2d

Cir. Feb. 25, 2011).  The Executive Branch "is not owed deference on every topic;

rather [a court] will give serious consideration to the Executive's views only with

regard to the case's 'impact on foreign policy.'" *In re S. Afr. Apartheid Litig.*, 617

F. Supp. 2d 228, 281 (S.D.N.Y. 2009).

The Executive Branch was more recently invited by the Supreme Court to

express a view on a petition for *certiorari* asking the Court to address whether a

foreign forum is ever adequate under a *forum non conveniens* analysis in an

arbitration enforcement action; the Executive Branch declined to take any position,

and stated that, in *Figueiredo*, "[t]he United States did not, however, specifically

address whether an enforcement proceeding in Peru would furnish an adequate alternative forum. It instead assumed the availability of another adequate forum …") *See* <u>Brief</u> for the United States as *Amicus Curiae, Government of Belize v. Belize Social Development Ltd.*, No. 15-830, at 11-12 (December 2016) (noting only that the *Belize* case was a "poor vehicle" for resolving the conflict and urging the Supreme Court to decline the case). More notably, Ms. Yu ignores that in both cases, the Executive Branch *opposed dismissal* on *forum non conveniens* grounds, finding the foreign public policy either not relevant to U.S. interests or not proven. In any event, the views of the Executive Branch are "hardly dispositive." *See City of Annapolis v. BP P.L.C.*, <u>2022 WL 15523629</u>, at *4 (D. Md. Oct. 27, 2022) (citing *Conkright v. Frommert*, <u>556 U.S. 1401</u>, 1403 (2009) (Ginsburg, J., in chambers)). "[S]erious weight is a far cry from absolute deference," and the Supreme Court has emphasized that, although the Executive's views merit "greater consideration," it would be error to treat these views as dispositive. *In re S. Afr. Apartheid Litig.*, <u>624 F. Supp. 2d 336</u>, 341–42 (S.D.N.Y. 2009) (citing *Republic of Austria v. Altmann*, <u>541 U.S. 677</u>, 702, n.23 (2004)). The views of the Executive Branch—even where deference is due—are but one factor to consider and are not dispositive. *Id.* Its interpretations of the applicable law "'merit no special deference,'" as pure questions of law are "'well within the province of the Judiciary.'" *Altmann*, 541 U.S. at <u>701</u>.

Indeed, the *Figueiredo* court ignored the Executive Branch's argument that Peru's policy was not a relevant public policy consideration and dismissed the action.

### E. Rule 19 is Similarly Incompatible with Actions to Recognize and Enforce an Arbitration Award Under the Convention

With regard to failure to join necessary parties, the FAA, which implements the Convention, explicitly states that "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. In fact, as the prevailing party, the Estate could seek to enforce the award against Ms. Yu in multiple concurrent enforcement proceedings. *See, e.g.*, *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 281 (5th Cir. 2004) (commenting on the filing of enforcement actions in the federal district court in Texas as well as filing actions in Hong Kong and in Canada). Contrary to Ms. Yu's assertions, all parties to an arbitration are not required to be joined in an action to enforce an arbitral award in the United States. *See Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 436–37 (2d Cir. 2004).

33

## II.    THE COURT MAY AFFIRM THE DISTRICT COURT ON THE ALTERNATE GROUND THAT THE *FORUM NON CONVENIENS* AND RULE 19 FACTORS ARE NOT SATISFIED HERE

### A. This Court May Reach the Merits in the First Instance

A petition to confirm an arbitral award is "akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006).  In that context, this Court can affirm on any legal ground supported by the record and is not limited to the grounds relied on by the District Court. *See Service & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 685 & n. 10 (4th Cir.1992).  This could include making factual findings not reached by the District Court. *See Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993) (reviewing evidentiary record when district court based its decision on pre-emption grounds).  Where, as here, the proceedings have lasted several years, a remand to the District Court for initial consideration of this issue "would be an unnecessary waste of judicial and litigant resources." *See O'Reilly v. Bd. of Appeals of Montgomery Cnty., Md.*, 942 F.2d 281, 284 (4th Cir. 1991); *see also First Am. Title Ins. Co. v. W. Sur. Co.*, 491 F. App'x 371, 373–74 (4th Cir. 2012) ("[I]n reviewing the decision of a lower court, it must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason.  The reason for this rule is obvious.  It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground

within the power of the appellate court to formulate.") (*citing SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)).

Contrary to Ms. Yu's contention, there is no "lengthy record" for this Court to consider. To the extent that proceedings have continued in Hong Kong, they were not considered by the District Court and therefore are not properly before this one. *See* fn. 1, *supra.* In any event, "parties may bring suit to enforce awards notwithstanding the existence of ongoing proceedings elsewhere." *Steel Corp. of Philippines v. Int'l Steel Servs., Inc.*, 354 F. App'x 689, 694 (3d. Cir. 2009) (internal citation omitted). Moreover, as discussed at 3 and 14-16, *supra*, the only issues before this Court concern a money judgment and there is no need to review or rule on hypothetical issues related to specific enforcement involving real estate in China that is not being sought here.

## B. Ms. Yu Does Not Satisfy the *Forum Non Conveniens* Standard

Even if this Circuit followed the Second Circuit and permitted a *forum non conveniens* defense to be raised, it would fail. As noted at 23-28, *supra*, no court has followed *Figueiredo* and *Monegasque* in dismissing an arbitration action on *forum non conveniens* grounds, not even district courts in the Second Circuit bound to apply the doctrine. And no court anywhere has dismissed an arbitration enforcement proceeding on this ground against a private party or a U.S. domiciliary. Ms. Yu herself concedes that "where … the losing party subject to U.S. jurisdiction

has assets in the United States but will not voluntarily pay the award—the defenses at issue here would falter from the start." Br. at 35. *That is this case*. Ms. Yu resides in the United States and has deposited the full amount awarded in the judgment with the District Court. The only issue is her refusal to pay the award.

As an initial matter, Ms. Yu cannot demonstrate that there is an adequate alternative forum. As the D.C. Circuit has repeatedly stated, only a U.S. court can enforce a judgment against assets located—as they are here—in the United States. *TMR*, 411 F.3d at 303. The mere fact that there is a concurrent proceeding in another jurisdiction does not render the United States an inconvenient forum. *Steel Corp.*, 354 F. App'x at 694 ("parties may bring suit to enforce awards notwithstanding the existence of ongoing proceedings elsewhere.") (internal citation omitted).

Even if Ms. Yu could demonstrate that Hong Kong is an adequate forum, Ms. Yu cannot meet her heavy burden to override the Estate's choice of forum. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) (a defendant invoking *forum non conveniens* bears "a heavy burden in opposing the plaintiff's chosen forum."); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796 (4th Cir. 2013). Unlike the circumstances in *Monegasque* and *Figueiredo*, Ms. Yu is a private citizen who has a clear connection to this forum because she is a resident of Maryland with assets in the District, and the dispute is over private business dealings only—no public funds are involved. Indeed, even courts in the Second Circuit rarely

dismiss arbitration enforcement actions on *forum non conveniens* grounds, because the doctrine only warrants dismissal "[i]n a proper case." *CBF Indústria*, 2023 WL 185493, at *3.

"The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (*en banc*). A foreign plaintiff's choice of forum is entitled to more deference when the defendant has assets in the forum. *See Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 2016 WL 5793399, at *5 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 741 F. App'x 832 (2d Cir. 2018) (denying dismissal on *forum non conveniens* grounds where defendant "owns assets in the United States" and therefore plaintiff "appears to be motivated by genuine considerations of convenience …") (citing *Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 2013 WL 1245549, at *1 (S.D.N.Y. Mar. 26, 2013) (plaintiff's intent to enforce award against "assets it has reason to believe [the defendant] possesses within the United States" was "legitimate reason to bring petition here"), *aff'd*, 826 F.3d 634 (2d Cir. 2016). Ms. Yu's contention that Hong Kong may also enforce the award does not change the analysis. *Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 221 (S.D.N.Y. 2011) ("The mere existence of adequate alternative forums with some

nexus to this lawsuit is insufficient to upset petitioner's forum selection."); *Sony Ericsson Mobile Commc'ns AB v. Delta Elecs. (Thailand) Pub. Co.*, 2009 WL 1874063, at *2 (N.D. Cal. June 26, 2009) ("The Convention, however, allows for the bringing of 'concurrent enforcement' actions, including 'simultaneous enforcement actions' in different countries.") (internal citation omitted).

Nor do the public or private factors weigh in Ms. Yu's favor. Even the *Monegasque* and *Figueiredo* courts acknowledged that, because an award confirmation proceeding is a summary one, private factors are usually irrelevant. *See Monegasque*, 311 F.3d at 500 ("Private interest factors do not ordinarily weigh in favor of *forum non conveniens* dismissal in a summary proceeding to confirm an arbitration award … .")   "[T]his case does not involve the typical difficulties associated with conducting discovery or trial abroad," and therefore this case is similar to most summary proceedings to confirm an arbitral award in which the private interest factors do not weigh in favor of *forum non conveniens* dismissal. *Olin Holdings Ltd. v. State of Libya*, 2022 WL 864507, at *9 (S.D.N.Y. Mar. 23, 2022) (citing *Constellation Energy*, 801 F. Supp. 2d at 220).  Unlike in *Monegasque*, where evidence had to be developed and Ukrainian law applied to determine whether an award could be enforced against a non-signatory foreign sovereign, Ms. Yu has identified no evidence or foreign law that needs to be considered by this Court with respect to enforcing the monetary component of the awards at issue.

The summary nature of confirmation proceedings similarly results in the public factors being of little import. *See Sistem Muhendislik*, 2016 WL 5793399, at *5. Ms. Yu's reliance on *Figueiredo* misses the mark. *See* Br. at 42-43. In *Figueiredo*, the respondent was a foreign nation (*i.e.*, the Republic of Peru), not an individual who resides in the District of Maryland. As the *Figueiredo* court explained, "there is nonetheless a public interest in assuring respect for a ***sovereign nation's*** attempt to limit the rate at which ***its*** funds are spent to satisfy judgments." *Figueiredo*, 665 F. 3d at 392 (emphasis added). By contrast, in a recognition and enforcement proceeding between ***private parties***, a court in the Second Circuit observed that "even if there is a direct conflict between [foreign law] and the Final Award, New York's public policy does not call for vacatur here." *KT Corp. v. ABS Holdings, Ltd.*, 2018 WL 3364390 (S.D.N.Y. July 10, 2018), *aff'd*, 784 F. App'x 21 (2d Cir. 2019) ("it is unclear whether an established public policy against enforcement of arbitral awards that compel a violation of foreign law even exists in New York.").[9]

---

[9] There is no merit to Ms. Yu's alternate request that the Court stay this action pending the resolution of the court proceeding in Hong Kong. Ms. Yu contended, citing *Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 106 (1st Cir. 1995), that "the First Circuit has held that District Courts retain power to stay an application to confirm under the Convention pending a separate arbitration, despite a lack of explicit authority in the Convention's list of defenses." Br. at 31. But in *Hewlett*, the court stayed an enforcement proceeding in which a party was seeking a setoff based on an amount that itself had not been determined because it was subject to an ongoing separate arbitration. The First Circuit limited its ruling to the "peculiar

## C. There Are No Missing Necessary Parties

Rule 19 provides a two-step process for courts in considering whether a party must be joined to an action. First, a court must determine whether a party is necessary to the adjudication of a claim. Fed. R. Civ. P. 19(a). A nonparty is necessary only if "complete relief among the existing parties … not as between a party and the absent person whose joinder is sought," cannot be afforded in the nonparty's absence. *Soho Wilmington LLC v. Barnhill Contracting Co*., 2019 WL 165708, at *3 (E.D.N.C. Jan. 10, 2019); *see Dow v. Jones*, 232 F. Supp. 2d 491, 498 (D. Md. 2002). "The burden of proof rests on the party raising the defense … to show that the person who was not joined is needed for a just adjudication." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (internal quotation marks and citation omitted). Here, Ms. Yu cannot meet her burden. The FAA itself expressly permits "any party to the arbitration [to] apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. The sole case Ms. Yu cites in which an enforcement action was dismissed on Rule 19 grounds, *Intervest Int'l Equities Corp. v. Aberlich*, 2013 WL 1316997 (E.D. Mich. Mar. 29, 2013), was not brought under

---

circumstances" of that case. *Hewlett-Packard*, 61 F.3d at 105. The circumstances in *Hewlett-Packard* have no bearing upon the situation here, where the underlying arbitration has concluded, and the arbitral tribunal has already determined the amounts due to the Estate. Further, in the Hong Kong proceeding, no party is seeking to vacate any of the arbitration awards at issue.

the Convention.  Moreover, the plaintiff in that case sought to *vacate* an award, *see id.* at \*2 ("Intervest asks the Court to vacate the arbitration award because MCM was not a proper party to the arbitration.  Essentially, Intervest is asking the Court to render a decision on MCM's rights without MCM's presence.").  There is no similar request here, and *Intervest* is thus inapposite.

Ms. Yu contends that nonparty claimant Mr. Xu must be joined because he is a "co-obligee" and because Ms. Yu is "jointly liable to both claimants." Br. at 45-46.  But a co-obligor is not a necessary party under Rule 19(a). *See* Fed. R. Civ. P. 19(a) 1966 Adv. Comm. Note ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001) ("[A] person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party.").  Nor does the Estate's enforcement of the arbitral award impair the nonparty co-claimant's ability to enforce his rights. *Chattery Int'l, Inc. v. JoLida, Inc.*, 2012 WL 1454158, at \*8 (D. Md. Apr. 24, 2012).

Moreover, as Ms. Yu herself points out, Ms. Yu has already paid Mr. Xu the half of damages that was due to him (*see* Br. at 13) and the exact amount due to the Estate is therefore readily known and does not depend on or require joining the nonparty claimant.  Ms. Yu also notes the absence of Oasis, the entity the parties jointly invested in, and contends that Oasis and Mr. Xu must be joined because of

41

the "specific performance provisions" of the Final Award. Br. at 44-45. But as noted

previously, the specific performance provisions of the Final Award are not at issue

in this case. Indeed, the District Court's judgment imposes a money judgment

against Ms. Yu, and does not mention specific performance or any provisions of the

Final Award relating to specific performance.[10]

## III.  THE DISTRICT COURT DID NOT ERR IN REJECTING MS. YU'S PUBLIC POLICY DEFENSE

### A. Ms. Yu Has Not Met Her Burden to Establish the Applicability of any Public Policy Defense

The Convention's public policy defense is "construed extremely narrowly."

*BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 250 (D.D.C. 2015)

(citations omitted). A public policy defense "will succeed in only the narrowest of

circumstances … [and] requires a violation of the 'most basic notions of morality

and justice.'" *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan

Gas Bumi Negara*, 190 F. Supp. 2d 936, 955 (S.D. Tex. 2001), *judgment entered*,

2002 WL 32107930 (S.D. Tex. Feb. 20, 2002) (internal citation omitted). The

defense is "in fact rarely relied upon … . Only in clear-cut cases ought it to avail

---

[10] Moreover, in its Memorandum Opinion that accompanied the judgment, the District Court rejected Ms. Yu's argument that pre-award interest on Order 8 was "condition[ed]" on the completion of transactions in China that were mandated by the Final Award. JA2155. The District Court explained: "Nowhere in its two written decisions does the arbitral tribunal impose, or even consider, any contingency circumscribing pre-award interest on Order 8." *Id.* at 6.

defendant." *Tahan v. Hodgson*, <u>662 F.2d 862</u>, 866 n.17 (D.C. Cir. 1981) (internal citations omitted). "Such a public policy … must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Westvaco Corp. v. United Paperworkers Int'l Union, AFL-CIO*, <u>171 F.3d 971</u>, 976 (4th Cir. 1999) (quoting *W.R. Grace & Co. v. Rubber Workers*, <u>461 U.S. 757</u>, 766 (1983)).

Here, the District Court correctly concluded that Ms. Yu's fears of a hypothetical violation of Chinese foreign exchange law cannot satisfy this high standard. JA1577-1578. Ms. Yu cites no authority for her contention that making payment in the United States in U.S. dollars to satisfy a U.S. court judgment would violate Chinese foreign exchange laws, let alone makes the requisite showing that there is a "well defined and dominant" Chinese law or policy which prohibits such a payment. Ms. Yu submitted two declarations authored by a Beijing-based partner of Steptoe & Johnson LLP, which is counsel for Ms. Yu in this action. JA971-982; JA1295-1304. Neither of these declarations identify any example of a situation in which a payment outside China in non-Chinese currency was determined to be a violation of China's currency control laws, or that anyone was prosecuted for any such alleged violation. Nor does Ms. Yu explain how she was able to deposit approximately $3.8 million with the District Court to secure payment of the judgment, if such a Chinese law issue existed.

In any event, it is *United States* public policy that matters for purposes of the public policy defense, not China's public policy. *See Ukrvneshprom State Foreign Econ. Enter. v. Tradeway, Inc.*, <u>1996 WL 107285</u>, at *6 (S.D.N.Y. 1996) (public policy defense "refers to the public policy of the forum state, the state in which recognition and enforcement is sought, rather than to the state in which the award was originally rendered."); *see also Tahan*, <u>662 F.2d</u> at 864 (public policy defense applies when the policy is "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought."); New York Convention, <u>Art. V.2(b)</u> ("[r]ecognition and enforcement of an Arbitral Award may also be refused if … the recognition or enforcement of the award would be contrary to the public policy of that country.").  Accordingly, Ms. Yu's arguments relating to perceived violations of Chinese public policy cannot establish a public policy defense under the Convention.

Indeed, Ms. Yu's argument that U.S. courts should not enforce international arbitration awards based on a purported Chinese policy prohibiting "Chinese-centered debt from being paid abroad," Br. at 50, is contrary to the strong U.S. policy favoring confirmation of international arbitration awards.

There is also no basis for Ms. Yu's assertion, *see* Br. at 48-49, that the U.S. public policy of "comity" allows the court to consider Chinese public policy in determining whether a public policy defense exists under Article <u>V.2(b)</u>.  Similar

attempts to interject issues of a *foreign state's* public policy into Article <u>V.2(b)</u> defenses have been rejected by other district courts throughout the country. For example, *in Ukrvneshprom*, the respondent asserted that a foreign arbitration award should not be enforced because it was "contrary to the public policy and law of the Ukraine" and principles of comity in the United States. *Ukrvneshprom*, <u>1996 WL 107285</u>, at *6. The court recognized that the attempt to inject Ukrainian law through a comity argument was an end run around Article <u>V.2(b)</u>'s requirement that only United States public policy could be considered, and rejected it. *Id.* Similarly, in *Balkan Energy Ltd. v. Republic of Ghana*, <u>302 F. Supp. 3d 144</u>, 158-59 (D.D.C. 2018), the respondent argued that recognition and enforcement of a foreign arbitral award should be denied because a Supreme Court of Ghana opinion rendered enforcement of the award "violative of the Ghanaian Constitution." *Id*. at 158. The respondent asserted that recognition or enforcement of the award would "violate[] U.S. policy to afford international comity to decisions of foreign courts." *Id*. The Court did not hesitate to reject this transparent attempt to expand the scope of the public policy defense, and held: "Ghana cites no authority for the proposition that not affording deference to the Ghanian Supreme Court would 'violate the [United States'] most basic notions of morality and justice,' as required to establish a public policy defense." *Id.* (quoting *TermoRio S.A.*, <u>487 F.3d</u> at 938). Simply stated, "international comity" is not a vehicle through which Ms. Yu may interject issues of

Chinese public policy into the Convention's limited public policy exception under Article V.2(b).[11]

### B. Ms. Yu's Public Policy Defense Does Not Require an Evidentiary Hearing

Ms. Yu asserts that the District Court made a "glaring error" by allegedly "overlook[ing]" her purported evidence that if the judgment were denominated in U.S. dollars, it would place Ms. Yu at risk of violating Chinese currency restrictions. Br. at 50. She therefore requests an evidentiary hearing to resolve alleged disputed "factual issues" concerning whether the Estate could accept RMB payments in China and whether Ms. Yu would face legal risks if she paid a judgment outside China. *Id.* at 51-52.

---

[11] The decision in *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 715-16 (2d Cir. 1987), was considered by the District Court and properly rejected as inapposite. JA1577. That case concerned a conflict between a U.S. enforcement proceeding and a foreign bankruptcy, and the District Court noted the longstanding *United States* policy of extending comity to foreign bankruptcy proceedings. *Id.* Indeed, Congress enacted a new chapter to the Bankruptcy Code 18 years after *Victrix* for the express purpose of recognizing foreign bankruptcy proceedings. *See* 11 U.S.C. § 1515-1524. Ms. Yu cites no similar particularized U.S. policy concern with China's currency control laws.

Contrary to Ms. Yu's contention, the District Court reviewed and (correctly) rejected Ms. Yu's "evidence," because it did not support her contention that she faced any risk of violating Chinese law by making a payment outside China.[12]

Indeed, Ms. Yu submitted no *authority* supporting her contention that a payment outside of China to satisfy a U.S. judgment amounts to "effectively tak[ing] currency out of China without regulation." Br. at 50.  Ms. Yu's only "evidence" consisted of self-serving declarations from her own law firm in this action. *See supra*, at 11, 43.  Ms. Yu's speculative and unsupported assertions regarding alleged Chinese law exposure related to a payment outside China do not warrant an evidentiary hearing. *Cf. Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 468 (S.D.N.Y. 2013) (according little weight to defendant's argument that compliance with discovery obligations would cause defendant to violate Chinese law, because defendant "produced no evidence of a bank or its employees being meaningfully punished for disclosing confidential information to a U.S. court in contravention of Chinese law").

Indeed, contrary to Ms. Yu's contention, U.S. courts have routinely entered judgments in U.S. dollars based upon arbitration awards denominated in RMB. *See,*

---

[12] In fact, the District Court noted that it had even considered an unsolicited supplemental brief improperly submitted by Ms. Yu in rendering its decision. JA1570.

*e.g.*, *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*, 2022 WL 4485277, at *12 (S.D.N.Y. Sept. 26, 2022), *order corrected on denial of reconsideration*, 2023 WL 2734433 (S.D.N.Y. Mar. 31, 2023) (awarding U.S. dollar-denominated judgment based upon RMB-denominated arbitral award); *Qing Yang Seafood Imp. (Shanghai) Co. v. JZ Swimming Pigs, Inc.*, 2022 WL 2467540, at *7 (E.D.N.Y. Apr. 15, 2022) (awarding a judgment based on the U.S. dollar equivalent of RMB obligations arising from a dispute regarding failure to deliver goods to China).

In sum, the District Court was well-founded in concluding that there was no evidence that a judgment entered in the United States would undermine China's currency control interests. Even if Ms. Yu had submitted such evidence, "[a] disputed interpretation of a foreign law does not raise a material issue of fact sufficient to preclude action on a motion for summary judgment where, as in this case, counsel agree that all of the pertinent foreign law has been properly submitted as evidence." *Caribbean S. S. Co., S. A. v. La Societe Navale Caennaise*, 140 F. Supp. 16, 21 (E.D. Va. 1956). Rather, "statutes and decisions having been proved or otherwise properly brought to the attention of the court, it may itself deduce from them an opinion as to what the law of the foreign jurisdiction is, without being conclusively bound by the testimony of a witness who gives his opinion as to the law, which he deduces from those very statutes and decisions." *Id.* (citing *Finney v. Guy*, 189 U.S. 335 (1903)).

## IV. THERE IS NO BASIS TO DISTURB THE DISTRICT COURT'S DECISION TO DENOMINATE THE JUDGMENT IN U.S. DOLLARS

It is well-settled that the conversion of foreign currency awards into U.S. dollars at judgment "is the norm, rather than the exception." *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 158 (D.D.C. 2013), *aff'd*, 603 F. App'x. 1 (D.C. Cir. 2015) (affirming judgment that converted foreign currency award into U.S. dollars at plaintiff's request, stating that entering judgment in foreign currency notwithstanding that plaintiff specifically requested a U.S. dollar amount "finds no support in the case law and is contrary to the sensible policies articulated in the Restatement") (unpublished).[13]

Indeed, according to the Restatement (Third) of the Foreign Relations Law of the United States § 823(1) (1987), "a judgment in a foreign currency should be issued only when requested by the judgment creditor." § 823 cmt. b.; *see also Cont'l Transfer*, 603 F. App'x. at 4 ("a judgment in a foreign currency should be issued only when requested by the judgment creditor."); *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 220 (D.C. Cir. 2018) ("Recent cases have endorsed judgment in a foreign currency if the petitioner requests payment in that currency.") (citing *Cont'l Transfert,* 603 F. App'x. at 4).

---

[13] The Estate is not aware of any appellate authority setting forth the standard of review of a district court's entry of judgment in a particular currency.

Here, the Estate did not request that judgment be issued in a foreign currency; to the contrary, the Estate specifically requested that the foreign currency amounts awarded by the arbitral tribunal be converted into U.S. dollars. JA357-366; JA210-218; JA1824-182. Accordingly, consistent with the Restatement view and the D.C. Circuit's decisions in *Cont'l Transfer* and *Leidos*, it was proper for the District Court to enter judgment in U.S. dollars at the Estate's request.

Ms. Yu contends that the D.C. Circuit in *Cont'l Transfer* did not hold that it is "entirely up to the judgment creditor whether a judgment should be entered in the original currency or in U.S. dollars." Br. at 56. But the D.C. Circuit's decisions in *Cont'l Transfer* and *Leidos* plainly stand for the proposition that a district court may convert a foreign currency award into a U.S. dollar judgment if (at an appropriate time prior to the issuance of the judgment) the petitioner requests that judgment be entered in U.S. dollars. That is what occurred here; petitioner requested in its petitions that the arbitral foreign currency awards be converted into U.S. dollars. JA20; JA357-366; JA210-218; and JA1824. Ms. Yu notably disregards the D.C. Circuit's decision in *Leidos*, which reaffirmed its holding in *Cont'l Transfer*. In *Leidos*, the D.C. Circuit explained that because the petitioner in *Cont'l Transfer* "moved to confirm and enforce the award and asked that the judgment be converted to dollars," affirming the district court's entry of judgment in dollars was "straightforward" because "a judgment in a foreign currency should be issued only

when requested by the judgment creditor." *Leidos*, <u>881 F.3d</u> at 219-220 (citations omitted).

Ms. Yu offers no authority for the proposition that the loser of an arbitration may veto the prevailing party's request that a foreign currency award be converted into a U.S. dollar judgment, where (as here) the prevailing party requested in its petition that judgment be issued in U.S. dollars.

Ms. Yu's observation that judgment "may" be entered in a foreign currency if it was the currency that "the parties themselves selected for their dealings" is irrelevant to this case, given that the Estate expressly requested judgment in U.S. dollars. Br. at 53 (citing *Sea-Roy Corp. v. Parts R Parts, Inc.*, <u>1999 WL 111281</u> (4th Cir. Mar. 4, 1999)). In any event, the currency in which the parties chose to deal was Hong Kong dollars, not RMB. Clause 2.2.1 of the underlying Agreement explicitly states that the cash components of the agreement were to be paid in Hong Kong and denominated in Hong Kong dollars.[14] JA34. Ms. Yu provides no authority for supplanting the currency in which the parties chose to deal.

---

[14] Clause 2.2.1 of the 4.28.10 Agreement provides: "All Parties agree that the cash component of the repurchase is to be paid according to the following schedule: (I) Hong Kong dollars equivalent to RMB 80 million ("1st" Payment") is to be paid within 10 days once the following prerequisites are met: [… .]."

Nor is there any basis for this Court to entertain Ms. Yu's irrelevant and unsupported contention that the Estate's request for a judgment in U.S. dollars rather than RMB was an attempt to "skirt Chinese currency control laws and avoid Chinese withholding taxes."[15] Br. at 55. The Estate brought this action in the United States, the very jurisdiction *where Ms. Yu lives*, and requested a judgment in U.S. dollars consistent with the overwhelming caselaw and other authorities discussed above that permit award creditors to request U.S. dollar judgments. Ms. Yu has no authority for her contention that the District Court was required to enter judgment in RMB notwithstanding the Estate's request for a U.S. dollar judgment.

## CONCLUSION

For the reasons set forth herein, the Court should affirm the District Court's judgment in all respects.

---

[15] Indeed, as the Second Circuit noted, "[c]ourts should be mindful that … defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of … forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum." *Iragorri*, 274 F.3d at 75.

Dated: New York, New York
      May 24, 2023

                        SEIDEN LAW LLP


                        By: */s/ Amiad Kushner*
                            Amiad Kushner
                            Jennifer Blecher
                            Xintong Zhang
                            322 Eighth Avenue, Suite 1200
                            New York, NY 10001
                            akushner@seidenlaw.com
                            jblecher@seidenlaw.com
                            xzhang@seidenlaw.com
                            (646) 766-1914

                            *Counsel for Petitioner-Appellee*

## CERTIFICATE OF COMPLIANCE

This document complies with the limits of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts exempted by Fed. R. App. P. 32(f), this document contains 12,906 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced font using Microsoft Word 2010, namely, Times New Roman, font size 14.

Dated: New York, New York
     May 24, 2023

                     /s/Amiad Kushner
                     Amiad Kushner